Good morning, Your Honors. May it please the Court, I'm Jan Norman. I'm appearing here on behalf of the petitioner, Brett Patrick Pensinger. In preparing for this oral argument, I have organized it in three separate parts, and the first part would be to address the question about the applicability of Teague and whether it should be applied, even if it is, whether it's applicable and whether the court should exercise its discretion to apply it. I'm sorry, Your Honor, sometimes I get tongue-tied. The second would be to address Claim 24, which I will refer to in shorthand as the Green Instruction Claim. That would mean the instruction that the jury had to find an independent felonious purpose between the kidnapping and the murder. Or in other words, the kidnapping couldn't be simply to transport the victim to the murder site. It had to have an independent purpose. And then lastly, I would address the guilt phase issues that are raised in the uncertified claims. Unless the court would like anything addressed in a different order, that's all I can say. That makes good sense, Ms. Norman. The question with regard to Teague, obviously, is intertied with the decision by the California Supreme Court in Green, and so that would be a good place to start. We have a decision by the California Supreme Court on direct appeal essentially ruling that the second paragraph of Green was not required because there was no evidence to support the need for that. And so the question in my mind under Teague is, you know, first of all, I guess, can you address the question with regard to whether Teague would apply at all or whether any of its exceptions would apply in respecting principles of comity and finality, how the court should weigh all that in deciding whether to apply our decision in Williams, which seems to be contrary to the Supreme Court's decision in Green. Does that all make sense? Yes, it does, Your Honor. Okay. And let me begin by stating that I'm not going to argue that one of the two exceptions to the Teague rule apply. I'm going to focus first on the question of Teague, which says a new rule of constitutional law cannot be applied retroactively on Federal collateral review to upset a State conviction. Okay? That's the part I'm going to deal with. I'm not going to deal with the two exceptions. And I would propose that the claim is not barred by Teague, and that's because there are basically two constitutional violations that are underlying the claim in Claim 24. The first is the 14th Amendment guarantee of due process. And if we look to that guarantee, it's enunciated clearly in In Re Winship 390 U.S. 358 1970, where the Supreme Court held that due process requires that a prosecutor must prove every fact beyond a reasonable doubt. Now, as I will argue later, the fact of whether or not it was plausible that the kidnapping was merely incidental to the murder is one of those facts, and I'll argue that it was in fact plausible. So is your argument that it's an element of the special circumstances kidnap-murder aggravator or enhancement? Are we talking enhancement or are we talking aggravator? We're talking aggravator. We're not talking enhancement, because enhancement would be simply be, you know, were these other variables involved. This is a definition of a special circumstance, which is what makes my client eligible for the death penalty. Now, when you break down the element of the Green instruction, the Green instruction does not say, and I'm not going to argue, that it has to be given in every case. The Green instruction only has to be given where there is substantial evidence where a jury could draw an inference that the underlying felony was merely incidental to the murder. So I'm not sure, to be perfectly honest with you, I'm a little confused as to whether we call that an element. If you define an element as it has to be given every time there's a special circumstance, then it would not be a classic element. But your position is that it doesn't have to be given every time? It does not have to be given every time. And the California Supreme Court on direct appeal said it was not necessary to give it here, did they not? Yes, they did, but they made that determination based upon their factual review. And as I have argued in my briefs and I will argue later, well, maybe I won't. Now, the question is whether the Supreme Court decision was fairly supported by the facts. And this Court has to review that question even though there is deference to the opinion by the California Supreme Court. The Supreme Court just simply can't give an opinion and there's no questioning. It has to be fairly supported by the facts of the case. So my position is that the need to give the green instruction was fairly supported by the evidence that was presented at Mr. Penzinger's trial. Therefore, the California Supreme Court finding as a matter of fact that there wasn't substantial evidence. What do we do with the fact that, as I understand the California Supreme Court's defense at trial was, I didn't do it. Whoever did this awful crime, it wasn't me. And therefore, and that's why the defense didn't ask for it, the prosecution didn't ask for it, and the question is how does that trigger a sua sponte obligation on the part of the superior court judge to give it? Because it is not inconsistent with the defense. The sua sponte instruction has to be given where there is evidence to support it and is not inconsistent with the defense. It is not inconsistent with the defense to instruct the jury on every element and fact that they need to prove. If it were, if there were no obligation on the judge simply because he said I didn't do it, then there would be no, if you carry that logic out, then there would be no obligation on the judge to even instruct on the jury kidnapping. It's a little bit of a circular problem. You began your argument by saying this is a constitutionally required instruction under the due process clause, yet it's not required in every case. Correct. And Estelle versus McGuire tells us that we don't normally review questions of state law or state jury instructions unless we conclude that the failure to give the instruction deprived the defendant of a fundamentally fair trial and therefore violated his Sixth Amendment due process rights. Correct. So how do I get to that where the green instruction isn't required in every case, it wasn't requested by the defense in this case, and the defense was I didn't do it? Well, you've asked several questions. I wasn't there. Let me try to parse that out. I'm just trying, I want you to understand what we've been struggling with in trying to figure out what the correct analysis is, and that's why we didn't want you to be blindsided at the argument, and we issued the order so you could think about it in advance of the argument. Well, I have thought about it, Your Honor, and unfortunately obviously didn't answer it sufficiently in the briefing. I understand the dilemma, and the answer, I have to give the answer in several parts. Go ahead. Let me understand. So the question, your first question is am I making an argument that it's not consistent with Estelle? No. I'm saying that this meets the standard of Estelle as a due process violation because the jury, in fact, the jury instruction so infected the trial that it rendered a violation of due process. I'm not sure that's not the case. The failure to instruct. Yes. So I am asserting that he meets that standard in Estelle. Now, the second part of your question, if I get it right, is the issue of why is it required even though it's not an element? And the answer to that is that if you look to Winship and then you look subsequently to Sandstrom v. Montana at 397 U.S. 358, 1979, there the courts said, let me finish the thought, in Winship they said they didn't say every element. They said every fact, okay? So this is a fact and dispute based on my argument. Okay. So the fact of the Green instruction, they didn't say every element. Then you go to Sandstrom, and in Sandstrom, they applied, the Supreme Court applied the Winship to a jury instruction and said where intent is at issue, prosecution must prove every fact beyond a reasonable doubt. Now, in that case, it was a homicide case, and they had instructed that if the defendant purposely and knowingly caused a death that was sufficient because the law presumed the person intends the ordinary consequences of his voluntary acts. Now, so I would say that it is a constitutional violation, but under the 14th Amendment, that doesn't, when the prosecution doesn't prove all the facts that are necessary for the, to sustain the special circumstance, and I would say that under Estelle- So is it a, let me stop you there. Okay, the facts necessary to support the special circumstance. The jury had before it the kidnapping, which from my reading of the record could not have begun any earlier and probably began at the time that Pensinger took the children in his pickup without Vicki, the mother, at the Yuma Sheriff's substation in Parker. Right, or the prosecution's theory that it occurred after he got really angry, after he left the PDQ market.  Okay, so at some point, either right after he left the sheriff's station, or right after he left the market, he got really worked up about the loss of the rifle. And therefore, he decided to take the children in revenge for the fact that the rifle had been taken from them. And we know from the evidence that thereafter, the five year old somehow either was let off or ran away, escaped, leaving the five month old. And then we have the discovery of the body in the mutilated form several days later, and a little bit of the admissions to the jailhouse informant. So if that's the state of the facts that were established at trial, help me understand how that triggers the obligation to give the second paragraph of the green instruction. Because the green instruction must be given, and you can look to Williams for this. In Williams, this court basically said that if there is another plausible theory that would support a green instruction, then you have to give that green instruction, unless you find that the jury necessarily found that that element had been met. So in other words, to put it in the scenario of the facts. Okay, so you've got a theory of kidnapping for sexual mutilation. You've got a theory of kidnapping just for, because I'm angry, I'm not clear where that's gonna go with being angry and, but that's, okay. So that's the second motivation. But if there is a third plausible inference in which the jury could infer that he kidnapped the kids solely for the purpose of driving to the dump and that's a third possible explanation, and that triggers the obligation to give the green instruction. But other than the fact that her body was found at the dump, what evidence was before the jury as to this second or I guess third scenario? Well, I would point the court to the very rationale given by the California Supreme Court to support the premeditation planned murder theory. And what they say here is he dropped off the older child. Okay, when the California Supreme Court said there was sufficient evidence of premeditated murder, they looked to the planning, and the planning was one. Pensinger dropped off the older child who could identify him and could have interfered with the murder. In other words, somehow tried to come to his sister's assistance. Now, that fact, I argue that that fact, the jury could have reasonably inferred that Michael was left unharmed because Pensinger decided not to murder both of the children. And- But if he was angry at the loss of the rifle, why did he drop off the five-year-old who had brandished it to the citizen in the parking lot who took the weapon away from him? Your Honor, I think, I could be correct, but I think you're not understanding how the argument is fashioned. It's not whether there were other plausible theories. There's a plausible theory that he kidnapped the children. I'm questioning whether that's even a plausible theory. You don't see that it's a plausible theory that he planned, that he got angry because the rifle had been stolen and decided to kill the baby. Right. When it was the five-year-old that he dropped off who was the one who had caused the loss of the rifle. I don't, that doesn't make any sense. Well, Your Honor, it makes sense to me that if you're really angry and you want to kill one of the children, let's say you decide to kidnap them and you decide not to kill Michael, then you decide to kill Michelle. I don't think it's implausible that at that point in time, he could have decided that it would be more difficult to kill Michael than it would have been to kill Michelle. So he left her at the side of the road. That he left him miles away from the dump because he didn't think Michael would be found that quickly. He didn't think Michael could identify him adequately. He didn't think that the body would be found. That's the other part that the California Supreme Court looks to is the fact that he selected this dump and implied that he knew where that was located. So his purpose in kidnapping the baby was to take her to the dump where he could kill her and leave her and she would never be found. I think that, under that scenario, I think a jury could reasonably infer that he possibly moved the children, which is the kidnapping, for the purpose of killing the baby. Or killing both of them and then decided as he's driving towards the dump that maybe Michael is not the one he wants to kill. Maybe he's a nice kid. I don't know. But I think a rational juror could say, okay, it's plausible to me that when he left the PDQ market and kidnapped them, he intended to cause them great bodily harm, i.e. death. And because that's a plausible theory, not that maybe even that's the strongest theory, but because that's a plausible theory, the green instruction had to be given. But those facts didn't sound plausible to the California Supreme Court in this finding, correct? That's correct, Your Honor. So what you're saying is that was an unreasonable application of facts? Well, actually, Your Honor, this is true in DEPA. We don't give it any presumptive validity? You give a presumption that it is correct. However, that's if it is fairly supported by the facts. And as the district court found, it was not fairly supported by the facts because there were three plausible theories. Which is exactly what happened in Williams. They said that there was a possibility that the murder was, that the kidnapping was only committed to facilitate the murder. Therefore, since you can't say that no rational juror could have inferred that, a green instruction was necessary. In other words, the jury sitting in deliberation had the instruction for lawful taking with the intent to harm them. I mean, that's sort of a short version of it. Then you have the special circumstances, which is taking the child during the course of the murder. I mean, while he's engaged in the murder or kidnapping, or murdering while engaged in the kidnapping. Right, it's murder while engaged in the course of a kidnap. It's always confused me. And I think that the jury could have reasonably decided that when he left the PDQ market, he was really angry about the theft of his rifle. And so he decided he was going to do, he was going to kill the kids. Killed Michael, killed Michelle, killed both of them. And the taking, the asportation of the rifle- Well, as the prosecution argued, we don't really know how he could, it may not be that it's rational, I mean, the other theory is that he just wanted, I mean, just plausibly decided to kill the kids all along, although there seems to be no reason for that. But we can't say that he could only desire to kill Michelle. Because, I mean, he couldn't desire to kill Michelle and not Michael, because Michael is the one that's, he was responsible for the theft of the rifle. Michael wasn't even responsible for the theft of the rifle. The rifle was left in the truck, and someone came along and took it away from him. Well, I thought it was because Michael was pointing- He was playing with it, Your Honor, that is correct. So he was responsible because the citizen took the rifle away from him as he was sitting in the truck pointing the rifle at people, presumably walking by in the parking. All right, Your Honor. I mean, isn't that what the record shows? Yes, you're correct on that, and I guess I misstated. You could assume that he would have been madder at Michael than he would have been at- That's why I was questioning your plausibility argument. Okay. Ms. Norman, I assume what you're trying to say is that we really don't know why Mr. Penziger did these things. Correct. We don't know- I mean, why would anyone rationally do this to a baby? There is no rational reason for it. So as I understand, to kind of get to the point of your argument, I think what you're saying is that we really don't know why Mr. Penziger did the things he did, and therefore, that's why the instruction in this case would have been needed because there isn't a clear path to explain what happened here. Unlike other cases, for example, there's the Clark case in the Ninth Circuit where the guy said, look, the reason why I set the house on fire was to flush out the family so I could shoot all- I could shoot the husband in front of my psychotherapist, and there was a plan. I guess what you're saying here is that we don't have a clear path like that, but we simply don't know why Mr. Penziger did it, and in those circumstances, you believe the instruction should have been given. I think you articulated it far more clearly than I did, Your Honor, and I appreciate it. But yes, that is the essence of my argument, that it is not- that it is plausible that we don't know. I mean, the prosecution, as you said, that it was to strike back, he also said, but who knows? Who would know that something like the theft of a rifle could lead somebody to murder a baby? So the prosecutor is tying the anger over the theft to the murder. The anger over the theft of the rifle led to the murder of a baby. Now, in order to murder the baby, he had to transfer her from the PDQ market downtown out to a isolated spot, the dump. So under those circumstances, I would argue that the green instruction was necessary. Now, I've noticed that I'm really running out of time. What do you want to- I know you said you weren't arguing the exceptions to Teague, but I'm trying to determine why Williams v. Calderon did not establish a new rule of criminal procedure by, in essence, requiring the giving of this jury instruction. I mean, isn't that what this is? Let me get there. Okay. Well, in the Williams case, they relied on the green case. And in the green case, the California Supreme Court said, we have to add this incidental theory in order to comport with the Eighth Amendment and satisfy the holdings in Furman and Gregg. And then what the court said in Williams is that it was- there was a- they were not creating a new law because this is- this- California added this element. Again, they used the element which is a little loose. Quote, out of constitutional nicety, not mere state law nice. Out of constitutional- let me try that again. Necessity. Out of constitutional necessity, not mere state law nicety. For without this narrowing construction, the special circumstance would run afoul of the requirements of Furman and Gregg. So I don't see how Williams is enunciating any kind of new law. What it's saying is that by the Eighth Amendment- based on the Eighth Amendment as interpreted by the California Supreme Court in reliance on Furman and Gregg, we have to have this narrowing instruction. So I don't see how that is any situation where Williams is creating a new law. In California, and I know green in California has been changed over the years, but in the time frame that we're talking about for our case- prior to green, if I kidnap someone in order to murder them, prior to green that was a valid special circumstance for felony murder, correct? Correct. But after green, if I commit the same crime, I kidnap someone for the purpose of murdering them, that is not valid for the special circumstance in California. Correct. Post green. Correct. So in that instance, are we talking about- Teague talks about new rules of criminal procedure. Is green, in your view, a procedural decision? In fact, I probably should use Williams. Is Williams a procedural decision or is it a substantive decision interpreting what constitutes a special circumstance in California? Well, Your Honor, I would argue that it's the latter rather than the former because what you're really talking about here is not the procedure by which it's imposed, but what has to be proven in order to satisfy the Eighth Amendment. So in your case, I would certainly agree with your argument and appreciate the way you have phrased it. How can you then help me distinguish the Supreme Court's 1997 decision in Lambrix, L-A-M-B-R-I-X versus Singletary, 530 U.S. 518 in 1997? In that case, the court said that the rule announced in Espinoza versus Florida, which specified the procedures that suffice to cure a violation of the God-free rule, which discussed Furman and Gregg, does not fall under either the primary which suggests to me that it's procedural and not substantive. Your Honor, I very regretfully admit that I have not analyzed that question in the context of Lambrix and Espinoza. I mean, we've really been struggling with this. There's another one you might want to take a look at, Gilmore versus Taylor at 508 U.S. 333, and the pin site there is 344 to 45. That was a 1993 Supreme Court decision declaring that the rule announced in the Seventh Circuit requiring an express instruction that the jury could not return a murder conviction if it found that the defendant possessed a mitigating mental state was a new rule for purposes of T. Well, in that case, Your Honor, again, although I'm not familiar with the facts of this case, I would argue that in the one situation it's talking about what is a mitigating circumstance and the proof of a mitigating circumstance, whereas in Mr. Penzinger's case we're talking about what are the basic instructions in order to find someone guilty of or find a spiritual circumstance true. I would think that would be a distinction that would be sufficient to. If they're not elements, if it basically tells the jury how it makes that determination, I mean, I'm not sure labels procedural and substantive help us all that much, but that sounds more procedural than substantive to me. Well, Your Honor, I'm not sure how to better explain that, and this may be a question that frankly needs further briefing because I haven't addressed this question. I really examined this question to be perfectly honest with you. Well, why don't we hear from the State? I'll give you a little extra time in rebuttal. Thank you, Your Honor. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Lisa Jacobson, Deputy Attorney General for the Respondent. This Court should definitely consider the Teague issue in this case. And the claim is Teague-barred because there was no precedent in 1991 that required an instruction on Teague. Let me ask you a preliminary question, Ms. Jacobson. Do you agree that the Teague issue is waived by failure to raise it in the answer and that we reach the Teague issue only if we exercise our discretion? There is some authority in the Supreme Court that I'm probably going to murder the name of it, Gokey v. Branch, which would support an argument of non-waiver because we did raise it in the motion to alter or amend the judgment in the district court, and the district court had an opportunity to consider it. You raised it in the 60B motion but not in your answer. Correct. Now, help me out. Is there any case which bright lines the issue and says if it's not raised in the answer and it's raised in a post-judgment motion, it's waived? I believe there's a case out of the Sixth Circuit, and then there's one that follows it where one judge at the Sixth Circuit said it was waived. The Sixth Circuit doesn't really reach all the way to California, does it? No, Your Honor. But, counsel, isn't there a case from the Ninth Circuit, it was a Federal case, United States v. Navarro, where the prosecutor in that case filed a motion for reconsideration and this Court said under Teague that's not good enough? I'm not aware. I didn't see the Navarro case. But assuming that it is a discretionary thing, there are compelling reasons why this Court should consider Teague in this case. It would be dispositive on the green instructional error claim. And if the green instructional error, if the district court's ruling on that were to go uncorrected, the State would have to retry the kidnap-murder-special circumstance and the penalty phase in a 33-year-old murder case. And the social cost of that would be profound. But, counsel, the Ninth Circuit in a case called Arradondo, which featured the California AG's office, made it very clear that if you want to raise Teague, it needs to be the first argument in your brief. And I can read exactly what Judge Reimer wrote in the opinion. First argument in the brief, fully developed. In this case, it appeared in one paragraph on page 50. So how do we – I understand the issues in the district court, but now this is the Ninth Circuit, and again, Teague is not raised the way this Court has said it should be. Yes, Your Honor, that's true. But Teague is not a traditional affirmative defense in the sense that Teague, the very purpose of Teague, is to vindicate a fundamental principle of justice, which is that all equal treatment of similarly situated prisoners. And this Court can consider Teague suesponding. Well, certainly we can, but this Court has said, if you're, you know, Attorney General of California, if you want Teague considered by this Court, this is the way to do it. And you guys didn't do that. No, Your Honor. So why – how many times do we have to keep saying, well, no, Your Honor, but, no, Your Honor, but, when it is discretionary? So what is the case? Obviously, we can decide it. We know that. The Supreme Court has said it. But what is the case you're relying upon that indicates that we really should exercise our discretion here? Is there a case where the California AG, or any AG for that matter, has treated Teague the way your office has in this case, and yet the Court has still heard your issue? Not that I am aware of. But I think that the principles here and the interests here, this Court should, in considering the interests. What are the interests? List them for us, if you would. Because to my way of thinking, if we have discretion, sometimes that gets mixed up with having power. That's not how we want to use discretion. We want to have discretion that's guided by some principles. Now, what principles guide the use of discretion in this case? Okay. The social cost of a retrial. This is a 33-year-old case. The State would have to go back and retry both the special circumstance and the penalty phase. The witnesses who are still available would have to relive the facts of this crime. And if they went back and did a redo, Pinsinger still wouldn't be entitled to an instruction on Green. So to not consider Teague here, simply because we didn't raise it in the answer in the District Court, or fully in first up in the Ninth Circuit, would substantially erode the public's confidence in the criminal justice system. And it would also undermine the State's interest in finality. Why wouldn't he be entitled to a Green paragraph 2 instruction if we vacated and remanded? Because under California law, you're not entitled to an instruction on Green unless there's substantial evidence to support it. And a California State court, this Court's decisions are persuasive, but they wouldn't be binding on the child. But there is substantial evidence that he had a purpose other than to murder this young child. Yes, sir. You presented evidence of sexual assault. You presented evidence of anger. You presented some other evidence. I can't recall what the torture was thrown out. So there was evidence to justify a Green instruction. Well, there's evidence to justify an instruction that the murder had to be committed during the course of the kidnapping. And they did get that instruction. What they're not entitled to and what they wouldn't be entitled to at a retrial is an instruction that says that the special circumstance wouldn't apply if Penzinger's sole purpose at the start of the kidnapping was to murder Michelle. They would be entitled to that. No, they would not be entitled to that latter part because they're, you know, assuming that the evidence at a retrial on the special circumstance would be essentially the same as it was in 1982, he wouldn't be entitled to that because his claim is he wasn't there. His claim is that he wasn't there and, you know, he's not going to bring that up because it's only going to be on a kidnap-murder special circumstance at this point. But the fact that if the evidence were the same at a retrial as it would have been in 1982 and that this court, you know, assuming it agreed with the district court's order, would reverse because we didn't raise Teague properly, that would erode public confidence in the criminal justice system. Counsel, one of the arguments made in the motion to alter was that the failure to argue Teague was through inadvertence or mistake. Yes, Your Honor. The government, the State in this case, did argue Teague many, many times on different issues. Yes, Your Honor. What is there on the record to support the position taken in the brief that it was through inadvertence or mistake? I think the fact that we argued it in six other places and collectively on the green issue we raised a procedural bar, timeliness. We argued it didn't raise the state law issue, that it failed on the merits, and that it was not prejudicial under Brecht. I think that shows that we were trying to argue everything possible that we thought of at the time. But has the State of California ever argued Teague when confronted with a green issue prior to this case? I am not aware of any case. So, for example, I didn't see it in reading the decision in Clark. I didn't see it in Williams. No. Clark was a little bit different in that it raised the issue of fair to instruct on a defense. So it was not, but it was not raised in either case, Your Honor, no. Are you aware of, one last question along these lines, are you aware of Teague ever being raised when there has been a discussion about special circumstances in California? Not that I am aware of. I'm trying to figure out, I'm confusing it with some state things, but no, not that I'm aware of. But apart from the high social costs, another reason. Let me go over this, because I must be rather dull this morning, but you tell me that if this case were to be retried again. Yes, Your Honor. Pensinger would not be entitled to a green instruction because there was no evidence that his sole purpose in transporting the child was to murder the child. There was insubstantial evidence of that. Yes, Your Honor. If that's so, if you're right about that, then there's no reason to grant habeas corpus now. Yes, Your Honor, and that's correct. The claim fails on the merits as well. But this is another reason for applying Teague, is that even if this Court were to somehow agree with the district court's ruling on the merits on the Teague thing, he still wouldn't be entitled to the instruction as a matter of state law at a retrial. As a matter of state law, but what about under Williams v. Calderon? The state court is bound by the decisions of the California Supreme Court, but this Court's decisions are persuasive, so it wouldn't have to follow Williams. And also, I mean, Williams is interpreting green, and green just requires that instruction when there's substantial evidence to support it. It's not required in every case. And there's no passage in Williams that, well, or is, I thought the two were diametrically opposed. I thought that Williams' decision requires that it be given in every case, but the panel doesn't expressly say that, does it? No, Your Honor, but they do treat it as an element of offense and call it an element of an offense, and In re Winship does say that you have to instruct on elements of the offense. And green is not even an instructional error case in the first place. It's a sufficiency case where the court is, says that the legislature in California adopted the special circumstances to comply with Furman and Gregg, and they're just interpreting a little piece of that during the commission of, and that's where we get the, so green wasn't even an instructional error case in the first place. So did our panel, is your position that Williams erred in calling it an element? It really isn't an element. No, it's not. And I think this court made that clear in Clark in its analysis and its citation to Robertson, because if it were an element of the offense, it wouldn't matter what the defense theory were. They would be entitled to the instruction no matter what. So I think it is clear both in this, under the Ninth Circuit authority and at least the decision in Clark and state law that it's not an element of the offense. What is not an element of special circumstances? The green is not an element of the special circumstance. The green is just a clarification of what the, during the commission of language, which now has been replaced with engaged in the commission of a felony language is. But if it's just a clarification, then how is it a new rule under T? Requiring the instruction is the new rule. Requiring an instruction on a clarification of a kidnap murder special circumstance is a new rule under T. And it's a procedural rule because it impacts the operations of the criminal justice proceedings. It's not substantive because it doesn't alter, you know, it doesn't decriminalize a class of conduct or render a certain group of defendants ineligible for the death penalty. There's a case from our court, the Webster decision, which does say when you're, when there are changes to special circumstances, it's substantive, not procedural. So how do you deal with the Webster case? The Webster case. I did look at that, but I believe that this case is different because it is a instructional requirement on a clarification of a felony murder special circumstance. Say that again. Thank you. It's an instructional requirement on a clarification of a felony murder special circumstance. So it doesn't decriminalize anything. It just requires the court in some instances to give this additional instruction if the evidence warrants it. This is very important to me, so I want to make sure I understand this. So I asked this question of your colleague. Prior to Green, if I were to kidnap someone so I could murder them, prior to Green, that was a valid special circumstance, correct? The special circumstance required a, during the special circumstance in the 1977 death penalty statute, required a premeditated murder during the course of a kidnapping. So if you commit a premeditated murder during the course of the kidnapping, it wouldn't, if your sole intent at the start was to murder, it wouldn't qualify as a special circumstance before Green or after Green because the element is the same, that during the commission of didn't change is all the Supreme Court did and during the commission of is say that that can't be satisfied by a felony conduct that is merely incidental to the murder itself. So. Well, I thought though, okay, maybe I need to go back and read these cases, but I thought prior to Green, if I, if I were, had a plan to murder someone and so I grab them off the street and kidnap them and drive them to an isolated spot, that that was sufficient to satisfy the special circumstance. But then after Green, the California Supreme Court said, no, that it had to be, it could not be merely incidental. It had to have an independent purpose. I don't think it's a change. I think it's more that the facts in Green raise the issue. The jury questions in Green, you know, put it in the forefront. And so in that context, they clarified what the element was. It's not a change in an element or a change in the law so much as it is a clarification or a development in these, you know, what at that time was a really new special circumstance provision. I don't know if this helps or hurts, but I'll, I'll ask. Prior to Green, is it fair to say that in order to impose the death penalty in California, jurors could find the special circumstance merely by concluding that the death penalty had been imposed during the commission of the kidnapping? Yes, Your Honor. Under the special circumstance, because that's almost literally the language of it. And then in Green, the court clarified what the meaning of during the commission is. It didn't change the law, though. It just clarified it. It just was a development of the law rather than a change in the law. Now, what do we do with Williams where this court wrote, moreover, as the California Supreme Court explained in Green, it added this element out of constitutional necessity. So it was not merely a clarification. It actually says it added this element. What do we, what do we, we've got to write an opinion here and I understand what you'd like the law to be, but we've got to see what Williams says. How do we deal with that? Well, I think respectfully that Williams misread the decision in Green a little bit because what Green said was the adding the special circumstances themselves was required by Furman and Greg. And then it went on to interpret what during the commission of the felony was. And then in Kimball and subsequent cases, the California Supreme Court has made it crystal clear that Green is not an element of the offense. And this court in Clark, as I mentioned earlier, made it clear as well that Green is not an element of the offense. So I would just respectfully submit that this court would just have to say that Williams was maybe misinterpreted Green or. But can, can this panel do that? Well, Clark in a sense has already done it by say, by its analysis and stating that Green of Green instruction is not required in every case. And I think when you're relying on a state court decision, I mean, you could subsequent state opinions have made it clear. That's that, that it's not an element of the offense. And I would look to Kimball for that. Kimball is one of them. And then there's many after that, but I'm a little bit more interested in what you just said a moment ago. If I've got my notes, right, you're telling us that Clark, the arson case that judge Owens mentioned a moment ago, had reinterpreted Williams and said that a Green instruction is not required in every kidnap murder case. No, Clark did not reinterpret Williams, but Clark considered the issue of whether a Green instruction was required in that case. And in that case it was requested by the defense and they looked into the defense theory, the prosecution theory and the evidence of the case and concluded that a Green instruction was required in the case. And my point is that if, and if it were a felony, I mean, if it were an element of the special circumstance, you wouldn't even need to have that analysis. So Clark didn't need to consider whether a Green instruction was necessary or not. If that, if Williams had decided that in every case it had to be given. Yes, Your Honor. If it were truly an element of the offense. And I think in, I mean, Williams is like also clearly distinguishable from what we have here because in Williams, the defendant at one point said that he intended to kill the victim at the beginning of the felony. So Williams didn't really have to decide the Green issue. Also the California Supreme court in the Williams case just assumed error for purposes of argument. So in that sense, that is a way around Williams is that they didn't have to decide that issue. What remedy do you seek by a cross appeal? We seek, we, I, we want this court to set aside the district courts. On what basis? On any of three bases based on T based on the fact that Penzinger didn't establish a constitutional violation. The California Supreme court's determination that a green instruction was not required, was amply supported by the evidence. And third, on the basis of Brett, any error in failing to instruct was not prejudicial. Given the strong evidence that he had two independent purposes at the start of the kidnapping, one to molest Michelle and two to strike back at the me landers for the theft of the rifle. There was little, if any evidence that his sole purpose at the start of the kidnapping was to murder Michelle. Also the issue in the case, really the disputed issue in the case was the identity of the person who murdered Michelle and kidnapped the children. And the defense theory, which was supported by Penzinger's own testimony, was that someone else killed the children or killed Michelle and kidnapped the children. So for all of these reasons, we'd ask this court to reverse the district court's order, um, reversing the vacating the special circumstance and death judgment. So, so you would argue under Brecht that the fact that the California Supreme court set aside the torture special circumstances, um, leaving only the kidnap murder, special circumstances, it's still subject to harmless error analysis, even though this is the only basis on which the jury could now impose the death penalty. Yes, your honor. And I believe the court in Williams considered that sort of harmless analysis too on the penalty phase part. All right. And you would distinguish our decision in Clark on the grounds that it was the defense that requested the instruction. We found the evidence supported, uh, an arguable defense on that theory and the trial court's overruling of the request was constitutional error. Yes, yes, your honor. Under Trump better. No precedent. Okay. I think that takes care of the TIG issue. Is there anything else you need to just, if this court doesn't consider T just because of how we raised it in the district court and not in the answer and not, and in the appeal, um, pensioner would get a windfall. He would get relief on a claim based on a new rule of federal criminal law on federal habeas corpus and whether a defendant's death penalty judgment is reversed, should not turn on if and when the state raised T, it should turn on whether the judgment of conviction and sentence comports with federal law at the time. And so applying T care would also, um, further the state's interest in finality and the interest in comedy and federalism. So for all these reasons, we'd ask this court to apply T or alternatively to, um, uh, reverse the portion of the district court's judgment. If we don't apply T, what's the basis of your request for, for reversal? Oh, because the California Supreme court's factual determination that the record did not warrant an instruction on green was supported by the record. So green, uh, pensioner has not established a constitutional violation from the absence of the green instruction. And also the failure to give the green instruction was not prejudicial under Brecht. So for both of those reasons, thank you. And unless this court has additional questions for me, thank you. Thank you very much. Absolutely. Yeah, of course. A couple of points here on the issue of the waiver. Uh, obviously you're aware of the Arenda versus Ortiz decision. Um, and I would point out that the argument raised was raised in the brief in one paragraph. And it was, it was not even raised as the argument. It said, if the rule is that it has to be given in every instruction, it violates Teague. And that has never been our argument. So even the Teague argument that was raised in this courtroom was summary. It wasn't sufficient. And it was even the correct, incorrect argument. And I would also love to point out that this, the Teague argument was not raised in the answer, even though Teague was raised as a procedural bar to seven other claims in the answer. And that's a citation. The record is 4 ER 6 86. The state was given another opportunity to raise this because the district court asked specifically for briefing on the claim 24. And part of that request was they, they, they addressed the merits and I quote, any procedural bars that apply to the claim end quote. And that's at 5 ER 10 70. And the state filed this response in February, 2002 and did not raise any Teague issue. So it was only after all the briefing and the order have an issue that in a motion to reconsider that the state finally raised the Teague argument. But as the court has also noticed that even in the opening brief, they raised it in a very insufficient, insufficient manner. Now, the other point I'd like to talk. Ms. Norman, can I interrupt you? What's your response to Ms. Jacobson's Brecht analysis? I'm not sure I'm clear what her Brecht analysis was. She said that the, that the failure to give the second paragraph of the green instruction is still nonetheless, harmless error given the state of the record here, that the defense was, I didn't do it. It was the mother or someone else. I don't think that that is applicable for the following reasons. What we're looking at is the sufficiency or the viability of the special circumstance of kidnapping, which was the only special circumstance that remained. There may have been overwhelming evidence that he committed the murder. There may have been an overwhelming evidence that he was identified as the perpetrator of the crime, but the F, but in the special circumstance, there was also a plausible theory that the kidnapping was committed not for a separate purpose, but solely incidental to the murder. Under those circumstances, it doesn't matter how overwhelming the evidence was. And as for his. Let me just stop you on that. So, so your argument would be that it's plausible to conclude that at the moment, even before the kidnapping began, he decided to murder Michelle. Correct. And that was the whole discussion we had prior. Okay. All right. Okay. And counsel, just so I'm clear, that's a yard when I'm correct. Even if the defense theory was, I didn't do it. Let's assume, which is what it was. If the jury rejected that and the jury clearly did, and I, I don't want to forecast, but I think there's plenty of evidence supporting the jury's verdict as to who did this crime. That still doesn't answer whether or not he kidnapped them for an independent purpose or not. That's correct. That is, that is the basis. Once again, you have rephrased my argument better than I phrased it. The second, if Your Honor has any further question on that. No. Go ahead. Okay. The other point I'd like to address is this whole question about what exactly the green case is and is not. And, and the question, the attorney general's argument that the, that this was just a clarification of the law and that Williams got it wrong. And that Clark by default kind of said, well, it's not really an element and therefore they don't have to give it every time. I think it's important to understand one thing about Clark. Clark was raised, the Clark argument was raised in the context of a Sixth Amendment. I was, because you didn't, I said, I got up and I justified, hey, I intend, didn't intend to burn them all up. I intended to drive them out of the house so I could kill them. Okay. I testified to that. And when I asked for the incidental destruction, you said no. And what you did was deprive me of the right to present a defense. Right. Okay. That is not the same as an Eighth Amendment or due process amendment argument. So what, so that does not mean that Clark simply clarified that it was a narrowing instruction. It was not a narrowing instruction. What the California Supreme court said is without this instruct part of the instruction, we violate the Eighth Amendment. It is not that, that is how it was perceived. It wasn't perceived as, well, we're just explaining what it means. You had Furman in Georgia and Furman and Craig and the California Supreme court says to comport with these particular findings that the current state law violates the Eighth Amendment. We are going to say, you have to find that the underlying felony had an independent purpose. And therefore it is not a narrow, it is a necessary part of the instruction when the facts support giving it. And as we, I have said, and I argued the facts in this case did support giving it. That was a plausible theory. One of three, I admit, but a certainly a plausible theory that his intention was to murder and the moving the victim to the place of the murder. Okay. I think we have your arguments. Thank you both for very well argued and we'll puzzle our way through it and give you our best responses. And if your honors would like any further briefing, we'll talk about, we'll talk about that when we go into conference. And thank you very much. Thank you. We are adjourned until 9am tomorrow morning.
judges: Tallman, Bea, Owens